IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

COLUMBUS BANK & TRUST COMPANY, *

    Plaintiff, *

vs.                             *     CASE NO. 4:08-CV-78 (CDL)

COMPUCREDIT CORPORATION and *
COMPUCREDIT ACQUISITION
CORPORATION, *

    Defendants. *

O R D E R

The present action arises from Defendants' alleged breach of a contract between Plaintiff and Defendants. Plaintiff contends that federal jurisdiction exists because the interpretation of federal law is essential to Plaintiff's claim. Defendants respond that no substantial federal question exists, and thus the Court lacks subject matter jurisdiction over this state law breach of contract action. Accordingly, Defendants have filed a motion to dismiss Plaintiff's complaint (Doc. 9). For the following reasons, the Court grants Defendants' Motion to Dismiss.

BACKGROUND

In January 1997, Plaintiff entered into an affinity agreement with Defendant CompuCredit Corporation ("CompuCredit"). That agreement provided that Plaintiff would issue credit cards to various consumers, and CompuCredit would purchase the receivables generated

1

by those credit card accounts. (Compl. ¶¶ 8-10.) On December 5, 2005, Plaintiff and CompuCredit entered into a comprehensive Amended and Restated Affinity Card Program Agreement and Accounts Ownership Agreement ("Affinity Agreement"). (Compl. ¶ 9; *see* Ex. 3 to Compl.) Several of the amendments included in the amended Affinity Agreement were prompted by the issuance of the Account Management and Loss Allowance Guidance for Credit Card Lending (the "AMG"), promulgated by the Federal Deposit Insurance Corporation ("FDIC"). (Ex. 1 to Compl.) The AMG, issued on January 8, 2003, was intended to "assist financial institutions in conducting credit card lending activities in a safe and sound manner, while meeting the needs of their customers. The guidelines outline the supervisory agencies' expectations for prudent risk management, risk recognition and loss allowance practices." (*Id.*)

Section 3.08 of the Affinity Agreement is relevant to the present action. That section contains a "Regulatory Criticism" provision requiring Plaintiff to inform CompuCredit if Plaintiff receives any criticism from the FDIC or any other banking regulator regarding the subject matter of the Affinity Agreement. (Ex. 3 to Compl., Affinity Agreement 14.)

In June 2006, the FDIC notified Plaintiff that the CompuCredit card program was not in compliance with the AMG. (Farrar Decl. ¶ 9, July 22, 2008.) Plaintiff informed CompuCredit that in light of the FDIC notice of non-compliance, changes needed to be made to comply

2

with the AMG. CompuCredit responded on March 6, 2008, with a proposed plan that it claimed would satisfy AMG requirements. (*Id.* ¶ 14, Ex. C.) Plaintiff informed CompuCredit that its proposed plan would not comply with the FDIC requirements and insisted that CompuCredit make changes that Plaintiff deemed necessary for compliance purposes. In a June 6, 2008 letter, CompuCredit notified Plaintiff that it refused to implement the changes that Plaintiff proposed to bring the card program into compliance with the AMG. (Compl. ¶ 24; Ex. A to Defs.' Mot. to Dismiss, Letter to Michael D. Smith Re: Response to May 23, 2008 Letter (June 6, 2008).)

On June 9, 2008, Plaintiff entered into a settlement agreement with the FDIC. That settlement included the FDIC's issuance of an Order to Cease and Desist and Order to Pay (the "Consent Order"). (Farrar Decl. ¶ 24; Ex. 4 to Compl.) The Consent Order required Plaintiff to implement policies, practices, and systems to comply with the AMG within sixty days and also required that Plaintiff ensure that its service providers, including CompuCredit, complied with the requirements. (*E.g.*, Farrar Decl. ¶ 24.)

On June 11, 2008, Plaintiff filed the present action in this Court contending that Defendants breached the Affinity Agreement by refusing to make changes required to bring them into compliance with the FDIC regulations. Plaintiff seeks injunctive relief requiring Defendants to make the changes necessary for compliance. Plaintiff contends that federal question jurisdiction exists. Defendant

3

responds that since no federal law provides a private cause of action for Plaintiff's claims, no basis exists for federal jurisdiction. Plaintiff argues that notwithstanding the absence of a federal cause of action, the resolution of Plaintiff's claims involve substantial questions of federal law, and thus this Court has jurisdiction. Defendants disagree and seek dismissal of Plaintiff's complaint for lack of jurisdiction. For the following reasons, the Court grants Defendants' Motion to Dismiss.

## DISCUSSION

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In this case, Plaintiff bears the burden of establishing federal jurisdiction. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 n.9 (11th Cir. 1982). Federal question jurisdiction may be based on a civil action alleging a violation of the United States Constitution, or a federal statute establishing a private cause of action. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 (1986). "In limited circumstances, federal question jurisdiction may also be available if a substantial, disputed question of federal law is a necessary element of a state cause of action." *City of Huntsville v. City of Madison*, 24 F.3d 169, 172 (11th Cir. 1994) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 12 (1983)). Because this case does not arise under the United States Constitution and no

4

private cause of action exists,[1] Plaintiff's sole avenue into federal court is through the substantial federal question doctrine.

Plaintiff contends that Defendants are not in compliance with the federal AMG requirements and have therefore breached their contract with Plaintiff by refusing to make changes necessary to comply with federal law. Defendants contend that they have not breached the contract because their proposed changes, which have been rejected by Plaintiff, comply with the federal AMG regulations. Thus, an interpretation of the federal regulations is pivotal to the determination of Plaintiff's state law breach of contract claim. For purposes of the presently pending motion to dismiss, the Court finds that the resolution of an issue of federal law is essential to Plaintiff's state law breach of contract claim.

Although a case may arise under federal law where the vindication of a right under state law necessarily turns on some construction of federal law, *Merrell Dow Pharms. Inc.,* 478 U.S. at 808, the mere fact that federal law may provide an essential element of a state law claim or that the interpretation of federal law is necessary to resolve the state law claim is not sufficient to invoke federal jurisdiction. As explained by the Eleventh Circuit, "in the

---

[1] Plaintiff acknowledges that there is no private cause of action in this case. (Pl.'s Opp'n to Defs.' Mot. To Dismiss 11.) *See* 12 U.S.C. § 1818(i)(1) ("[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section [of the FDIC Act], or to review, modify, suspend, terminate, or set aside any such notice or order."); *see also Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44-45 (1991).

absence of a private cause of action under [a] federal statute, interpretation of that statute as a necessary element of an otherwise state contract claim is not enough to permit exercise of federal question jurisdiction." *City of Huntsville*, 24 F.3d at 170; *see Dunlap v. G&L Holding Group Inc.*, 381 F.3d 1285, 1290-92 (11th Cir. 2004); *see also Jairath v. Dyer*, 154 F.3d 1280, 1282-83 (11th Cir. 1998).

On this point, the present case is indistinguishable from *City of Huntsville.* In *City of Huntsville*, the City of Huntsville entered into a twenty-year contract with the Tennessee Valley Authority ("TVA") to purchase excess TVA-generated power for resale to Huntsville's residents. 24 F.3d at 170-71. Under the contract, Huntsville was permitted to deposit into its general fund tax equivalent payments ("TEP") from the electrical system revenues. Although Huntsville was responsible for distributing the TEP to the localities in which it operated as deemed appropriate under section 13 of the TVA Act, Huntsville failed to do so. *Id.* at 171. Huntsville brought suit seeking a declaratory judgment regarding its obligations under the TVA contract and the federal TVA Act. *Id.*

The Eleventh Circuit held that even though interpretation of the TVA contract and the TVA Act was necessary to resolve the state contract claims between the City of Huntsville and the other localities which made claims to a portion of the electrical system revenues, federal jurisdiction did not exist. *Id.* at 174. The

6

Eleventh Circuit emphasized the absence of a federal cause of action in the TVA statute, reasoning that "it [would] be only the exceptional federal statute that does not provide for a private remedy but still raises a federal question substantial enough to confer federal question jurisdiction when it is an element of a state cause of action" and "[s]ection 13 of the TVA [was] not that rare statute." *Id.*

Based on *City of Huntsville,* federal jurisdiction cannot be found to exist for the present case simply because the interpretation of the FDIC regulations and related federal law may be essential to Plaintiff's state law breach of contract claim. Plaintiff must establish that this is that rare or exceptional case where a substantial federal question exists notwithstanding Congress's omission of a federal cause of action.

Little guidance has been provided to the lower courts for determining when federal law, upon which a state law cause of action is based, is sufficiently exceptional to invoke federal jurisdiction. These determinations appear to fall into the "decide on a case by case basis" or "you'll know it when you see it" categories of judicial decision making. Unfortunately, such decisions require largely subjective assessments. We know that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system[,]" *Merrell Dow Pharms. Inc.*, 478 U.S. at 810, and that for a state law claim to

7

authorize substantial federal question jurisdiction, the state-law claim must "'really and substantially involve[] a dispute or controversy respecting the validity, construction or effect of [federal] law[,]'" *Dunlap*, 381 F.3d at 1290 (alterations in original) (quoting *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982)); but these general principles standing alone do not help separate the substantial from the insubstantial. The Supreme Court has reassured us that the type of analysis required for this task is nothing new but is analogous to the evaluation of proximate cause: "'[w]hat is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of causation . . . a selective process which picks the substantial causes out of the web and lays the other ones aside.'" *Merrell Dow Pharms. Inc.*, 478 U.S. at 813-14 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 117-18 (1936)). Notwithstanding this reassurance that we know how to do this, the application of this "selective process" in a way that leads to consistent results based upon an objective standard rather than arbitrary outcomes based on subjective assessments still appears elusive.

Nevertheless, this Court must exercise "sensitive judgments about congressional intent, judicial power, and the federal system," *Merrell Dow Pharms. Inc.*, 478 U.S. at 810, and determine whether Plaintiff's cause of action should be picked from "the web" or

8

"[laid] aside." *See Gully*, 299 U.S. at 118. Having done so, the Court cannot justifiably conclude that the federal FDIC regulations here deserve special treatment when the federal law in *City of Huntsville* did not. It would be an entirely subjective distinction. Such distinctions are not necessarily uncommon in the law, but they are best made by the appellate courts if they must be made at all. Therefore, based upon *City of Huntsville,* the Court finds that no substantial federal question is raised in this state law breach of contract action, and thus no federal subject matter jurisdiction exists.

Responsible judicial analysis requires the Court to acknowledge, however, that reasonable jurists could conclude that *City of Huntsville* conflicts with the more recent decision by the Eleventh Circuit in *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000).[2] Although the Court ultimately finds the two cases to be distinguishable as explained below, the difficulty in doing so demonstrates the challenge of determining whether a *substantial* federal question exists in cases involving state law causes of action. In *Ayres,* the plaintiffs filed a state law RICO action in state court based upon the defendants' alleged violations of the

---

[2]While the Court finds the reconciliation of *Ayres* with *City of Huntsville* somewhat challenging, the Court has no hesitation in resolving any conflicts in favor of *City of Huntsville* since both cases were decided by three judge panels and *City of Huntsville* is the earlier case. Thus if any conflict exists, *City of Huntsville* is the binding precedent having been decided first and not having been overturned by the Court *en banc.*

federal Safety Act and federal mail fraud and wire fraud statutes, which were predicate offenses constituting racketeering under Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act. *Id.* at 516. The defendants removed the case to federal court contending that a substantial federal question existed because the plaintiffs' state law RICO claims depended upon violations of federal substantive law. The Eleventh Circuit found that jurisdiction existed. *Id.* at 519. The Eleventh Circuit pointed out that a violation of the federal Safety Act and the federal mail and wire fraud statutes was an essential element of the plaintiffs' cause of action. However, that could not have been the dispositive rationale for the Eleventh Circuit's holding because it would be directly contrary to existing Circuit precedent. *See City of Huntsville*, 24 F.3d at 174. Apparently recognizing this difficulty, the Eleventh Circuit noted that "[t]he particular controversy in this case may very well make this case one of those exceptional cases requiring that [the Eleventh Circuit] decide 'a federal question substantial enough to confer federal question jurisdiction.'" *Ayres*, 234 F.3d at 519 (quoting *City of Huntsville*, 24 F.3d at 174). But for some reason, the Eleventh Circuit felt constrained not to find that it was definitely such an exceptional case, equivocating only that it "*may very well*" be.

To find the true distinction between *Ayres* and *City of Huntsville* (and the present case), one must go to the footnotes in

10

*Ayres*. There the Eleventh Circuit observed that the federal mail and wire fraud statutes also "[were] enforceable through a private federal RICO action." *Id.* at 519 n.8. Thus, the Eleventh Circuit essentially finds that since Congress has provided for a private *federal* RICO cause of action to enforce the federal mail and wire fraud statutes, the federal mail and wire fraud statutes that provide for predicate offenses in a state law RICO action are sufficiently substantial to confer federal jurisdiction. This conclusion is consistent with the Supreme Court's emphasis on the existence of a private federal cause of action as an important factor necessary for federal jurisdiction. *See Merrell Dow Pharms. Inc.*, 478 U.S. at 812 ("The significance of the necessary assumption that there is no federal private cause of action [] cannot be overstated.").

In contrast, Congress has not provided for a private federal action based upon the violation of the FDIC regulations or related federal law involved in this case. This makes the present case distinguishable from *Ayres* and analogous to *City of Huntsville.* Duty bound to follow applicable precedent, the Court is left with no choice but to dismiss Plaintiff's complaint for lack of subject matter jurisdiction even though the interpretation of federal law may be essential to and potentially dispositive of Plaintiff's claims.

## CONCLUSION

Defendants' Motion to Dismiss for lack of subject matter jurisdiction (Doc. 9) is hereby granted.

IT IS SO ORDERED, this 3rd day of September, 2008.

                                                              S/Clay D. Land
                                                                   CLAY D. LAND
                                            UNITED STATES DISTRICT JUDGE